THE GEORGIA RAILROAD & BANKING COMPANY *v.* BROOKS.

*Atkinson, J.*—The evidence was conflicting, but being sufficient to sustain the verdict rendered in favor of the plaintiff, and the same having been approved by the trial judge, this court will not overrule his discretion in denying a new trial.

August 16, 1895.   By two Justices.          *Judgment affirmed.*

Action for damages.   Before Judge Reese.   Oglethorpe superior court.   October term, 1894.

Brooks sued the railroad company for a personal injury received by him while in its employment as a train-hand, and obtained a verdict for $1,600.   The company moved for a new trial on the grounds that the verdict was contrary to law and evidence, and the motion was overruled.   The injury occurred by plaintiff's arm being caught between the dead-blocks of two freight-cars which he was endeavoring to couple by order of the conductor of the train.   The negligence charged against the company was, in carelessly running the train back to the standing car with too great speed.   Plaintiff testified: When they came back I signaled them down; he was running at such a rate I saw it would break things up.   I went to the cab and placed my link, and stepped out and gave him a signal to come back slowly.   There was a negro above me, giving the same signal that I was giving, to the fireman.   I went in to make the coupling.   The train was coming so fast, I could not tell its speed until it was too late.   It was coming so fast I could not tell how fast it was coming.   I was about half a car-length from the cab when I signaled the car to come back; the car was about a car-length (34 feet) from me.   I had stopped the car in about a car and half length of the cab.   I then walked back at about three miles an hour, and just as I got to the cab the car was on me.   After signaling the car to come back slowly from that distance, I went in to make the coupling.   I had just walked in when the car caught me.   I was giving signals until I saw it was time for me to go in and make the coupling.   It was dark (the night of

December 20, 1892), and I was giving signal with a lamp. I could not tell the speed at which the car was coming, because it was dark. I attempted to make the coupling with my hand. I caught hold of the link to guide it, to make the coupling. I had been coupling cars there for four months; had coupled them with my hand; had been coupling cars all the time a similar way to the method I was using when I was hurt. I had been working under Callahan (the conductor) a little over a month. He had observed me making couplings in that manner. I make them all like that one. I was furnished with no other method, nor given any other instructions by Callahan or any other officer of the railroad, as to coupling cars. I signaled them back slowly from a dead standstill. I do not know where the conductor was the instant I was hurt. When I made these signals, the other train-hand, John Smith, took them up and repeated them to the fireman. The train was standing on the main track. I had uncoupled the locomotive and freight-cars from the cab. The locomotive with the freight-cars attached had gone down on the siding and got the car and come back on the main line to recouple to the cab. As it was coming back to do that, I saw it was coming too fast—saw it—I was in danger; I thought of smashing things up. I commenced waving him down. He would not have stopped if I had not waved him down; he would not have stopped at all unless he received a signal. It was his duty to come on back until he received a signal; so he was acting in the discharge of his duties; and on getting the signal from me, he acted as he should have done. I cannot tell how fast it was coming; it was coming mighty fast. I could ascertain it was coming back fast—too fast to couple to the cab. After hitting the train to a standstill, I went to the cab bumper and fixed the link, so it was hanging there ready for me to put it in the other bumper. I then set the pin in the freight-car bumper. After doing that, I walked back about a car-

length, and gave the signal for them to come back slowly, being then on the fireman's side of the track. I kept on giving the signal until the car got up right for me to walk in, and I walked in. The car was then about five or six feet from me. I just stepped in and got ready to make the coupling. I was then close enough to the cab to catch hold of the link by stretching out sidewise. When I went to catch hold of the link, I had my back to the cab and was facing the car moving toward me. I took up the link and held it there and let it slip into the bumper of the car as it came up, and that was the time my hand got caught, as the bumpers got together. The bumper is the thing in which the link and pin go. The dead-blocks are two pieces of casting just above and on each side of the bumper, placed there so that if the bumper should break, the cars would not come together. The dead-blocks strike together always. There were dead-blocks on each car. They are there so that if the train come back too rapidly, they will strike together and your body would not be mashed. I did not use a coupling-knife; do not know whether or not any coupling-knives were on the train; never had been instructed to use them nor seen others use them. I did not discover the speed of the train until it was right on me. I knew it was coming back, but expected it to come back slowly. I did not see it because it was so dark. I and the others had lanterns; they gave a pretty good light through a radius of ten feet. I took my arm over these dead-blocks to make the coupling; I had it over the dead-block. I cannot tell how my arm was caught between them. If I could have seen the fast moving train, I would not have gone in there.

Plaintiff further testified that his arm was badly hurt. It gave him considerable pain. He never slept for three nights after the injury. He seems to have had proper medical attention. He incurred $45 on this account, and some further expense for attention. He was twenty-one

years old at the time of the injury, and in good health. At the trial, two years afterwards, he could not bend his arm; could use it a little, but had no grip in his hand. He was receiving from the railroad company $26 per month, subject to deduction for time lost. He has, since July 14, 1893, been working for $24 a month in a position requiring no special physical strength, walking and riding over fields to have work done by laborers, .etc.

The defendant introduced the conductor, engineer, fireman and brakeman of the train in question. Their testimony was strongly opposed to that of plaintiff; it appearing. among other things, that the train did not come back rapidly but very slowly, on signals given by plaintiff and repeated by the brakeman and conductor to the fireman, who communicated them to the engineer; that it was a rule of the company that coupling-knives were to be used in coupling cars, and there were two of them on this train in the baggage-car, and accessible to plaintiff, who was instructed about using them when first employed.

*J. B. & Bryan Cumming* and *M. P. Reese,* for plaintiff in error. *W. M. Howard* and *D. W. Meadow,* contra.